Filed 5/27/14  In re Sebastian S. CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| In re Sebastian. S., a Person Coming Under the Juvenile Court Law. | |
| Jorge S., Petitioner, v. THE SUPERIOR COURT OF CONTRA COSTA COUNTY, Respondent, CONTRA COSTA COUNTY CHILDREN & FAMILY SERVICES BUREAU et al. Real Parties in Interest. | A141380 (Contra Costa County Super. Ct. No. J11-00335) |

Jorge S. is the father of Sebastian S., who was detained by the Contra Costa County Children & Family Services Bureau (bureau) in February 2011, and declared a dependent of the court in June 2011.  The court ordered reunification services for Jorge, who did not appear at dependency hearings and was not able to be located by the bureau. After some sporadic contact with the bureau in 2012, Jorge began regular contact with the bureau and supervised visits with Sebastian in 2013.  On February 24, 2014, Jorge requested a hearing, pursuant to Welfare and Institutions Code[1] section 366.3,

---

[1]  Unless otherwise indicated, all statutory citations are to the Welfare and Institutions Code.

1

subdivision (f), to determine whether he should be granted further reunification services. A hearing was held on March 12, 2014, and the court denied Jorge's motion.

By way of petition for extraordinary writ of mandate, Jorge contends that the denial of his motion was not supported by sufficient evidence and that the court abused its discretion in denying that motion. We find no merit in Jorge's arguments and affirm.

## BACKGROUND

Jorge and Maria S. have three sons: Michael, born in 1993;[2] Andrew, born in 1995; and Sebastian, born in 2002. From 1994 to 2010, the bureau received eight referrals for neglect and abuse concerning one or more of the sons. One of the referrals, for emotional abuse of Michael in 2001, was substantiated.

In February 2011, Michael reported Maria's drug abuse to a person who informed the bureau. After investigation, on February 25, 2011, the bureau filed a juvenile dependency petition, pursuant to section 300, on behalf of Sebastian and Andrew,[3] alleging substance abuse, mental illness, domestic violence and neglect on the part of Maria, and substance abuse, domestic violence, and neglect on the part of Jorge. When the two younger brothers were detained, Michael reported that Jorge and Maria were separated and that Jorge was "largely homeless."

A social worker attempted to call Jorge to inform him about a February 28, 2011 court date. Jorge returned the call and left a voicemail, but did not call back when requested. The brothers' relative caretaker reported that Jorge called Michael and berated him for talking to the bureau. Jorge wanted to visit Sebastian, but the caretaker told him that he would have to talk to the social worker. Jorge stated his refusal to work with the bureau and made threats to the caretaker.

On April 5, 2011, the court held a contested jurisdiction hearing at which neither Jorge nor Maria were present. The court sustained all allegations. Jorge continued to

_____

[2] We do not find Michael's date of birth in the record, but an April 2011 document indicates that he was 18 years old at that time.

[3] Although Andrew was subject to the juvenile dependency proceedings, he is now over the age of 18 and Jorge's petition does not involve him.

threaten the caretaker's family and the caretaker obtained a temporary restraining order. The temporary order was reissued several times and Jorge never attended a hearing on the order.

The court held a contested disposition hearing on June 6, 2011, at which neither Jorge nor Maria was present. The court declared Sebastian a dependent of the court and ordered reunification services for Jorge and Maria. The bureau had been unable to contact Jorge prior to the hearing. Jorge's case plan, which the court adopted, included individual and family therapy, drug treatment and parenting education.

In September 2011, the relative caretaker requested that Sebastian be removed from her care because of behavioral problems. Sebastian was placed in a licensed group home on September 29, 2011.

The court conducted a six-month review on November 28, 2011, and continued family reunification services to both parents. Jorge's whereabouts were still unknown and the bureau submitted documentation of its attempts to locate him.

A 12-month review hearing was held on March 26, 2012. The bureau recommended termination of the family reunification services for Maria because she had not participated in her case plan. Jorge had not requested visitation during the review period and his whereabouts remained unknown. Although Jorge had not participated in his case plan, the social worker's report did not, for unknown reasons, recommend termination of his reunification services. Following the hearing, the court ordered that reunification services be terminated for Maria.

On September 10, 2012, the bureau filed a status review report. According to the report, Sebastian continued in long-term foster care at a group home. Jorge had contacted the social worker and met with her in June and July 2012. He was remorseful, reported that he had been clean and sober for several months, and wanted to visit his sons. Sebastian's therapist initiated telephone contact between Sebastian and Jorge and a visit was planned at the therapist's office. Jorge cancelled on the day of the visit due to transportation issues and made no further attempts to arrange visitation. The social worker then discovered that Jorge's phone had been disconnected and that he no longer

3

worked at the restaurant where he had reported employment. An absent parent search request was initiated in August 2012.

On February 28, 2013, the bureau filed its next status review report. According to that report, since January 13, 2013, Sebastian had been placed in Michael's home, where Michael lived with his fiancée, Lydia. Andrew was also residing in Michael's home. Michael had located Jorge to inform him about surgery scheduled for Sebastian  Jorge then contacted the bureau in November 2012 and requested that visits be reinitiated. Despite attempts by the social worker, there was no contact with Jorge again until January 2013. The social worker told Jorge that supervised telephone contact might be initiated if he attended Alcoholics Anonymous/Narcotics Anonymous (AA/NA) meetings twice weekly and submitted proof of attendance.

At a hearing on February 28, 2013, the court limited the rights of Jorge and Maria to make educational decisions for Sebastian because "[r]eunification services for the child and family have been terminated or were never ordered." Michael was appointed as Sebastian's educational representative. The court continued a plan of long-term foster care for Sebastian.

On August 5, 2013, Jorge appeared in court for the first time. On August 19, 2013, the court elevated his status from alleged father to presumed father.[4]

The bureau filed its next status review report on September 9, 2013. Sebastian had started separate supervised visits with Jorge and Maria. At the first visit with Jorge, Sebastian was reported to be "very elated" to see his father again. At the review hearing

---

[4] Although it is irrelevant to the issues presented in his petition, Jorge believes that the court declared him to be the presumed father on March 26, 2012. We find nothing in the court's order of that date that relates to Jorge's status. The order does adopt the "findings & recommendations" of the bureau's status review report dated March 26, 2012. Although the report states that Jorge is considered to be the presumed father, that statement was neither a finding nor a recommendation. However, there is no indication in the record that Jorge was ever denied the rights due to a presumed father. Indeed, the court ordered reunification services for Jorge on June 6, 2011, and only presumed fathers are entitled to such services. (*In re E.T.* (2013) 217 Cal.App.4th 426, 437.)

on September 9, 2013, the court continued the plan of long-term foster case for Sebastian and ordered that unsupervised visits with Jorge could commence if Jorge tested negative for drug use.

On February 24, 2014, Sebastian's court appointed special advocate (CASA) filed a report. The report stated that Sebastian was doing "very well" in his placement with Michael. The advocate met with Jorge, his girlfriend, Nicole, and their baby. She described Jorge and Nicole as "overly solicitous in their desires to reunite with Sebastian." Jorge was described as exhibiting several characteristics of attention deficit hyperactivity disorder that professionals had been trying to modify with Sebastian. Nicole reportedly appeared to be "tweaking"[5] during the meeting: "fidgeting, constantly jutting her jaw forward and licking her lips." Although Jorge said he "would do whatever it took" to be with Sebastian, he had cancelled a recent visitation; missed a "WRAP meeting"[6] where he could have seen Sebastian; and asked to schedule a makeup visit over the Christmas break, but only spoke to Sebastian over the phone. Although unsupervised visits might have been allowed upon clean drug testing by Jorge, he had not attempted a drug test.

At a review hearing on February 24, 2014, Jorge requested a hearing, pursuant to section 366.3, subdivision (f), to determine whether he would be granted further reunification services.

On March 12, 2014, the bureau submitted a status review report recommending that the court set a section 366.26 hearing to determine the most appropriate permanent plan for Sebastian Of the previous five Wrap meetings, Jorge had missed two, including the Wrap celebration party, even though the social worker had discussed it with him the

---

[5] "Tweaking" refers to being high on methamphetamine. (http://www.urbandictionary.com/define.php?term=tweaking.)

[6] "WRAP" or "Wrap" is used, but not defined, in the record. It appears to refer to "Wraparound" processes or services, designed to maintain youth with serious emotional and behavioral problems in their home and community. (See http://en.wikipedia.org/wiki/Wraparound_(childcare).)

day before. Jorge had also not provided evidence of negative drug tests to the bureau. Michael wished to become Sebastian's guardian.

At a hearing on March 12, 2014, a social worker testified that the Wrap party that Jorge had missed was a "very important termination party" that was an "extremely important event" for Sebastian. She also testified that in addition to Jorge not having submitted to drug testing, the fact that Nicole's infant son had tested positive for marijuana at birth was of concern in allowing unsupervised visits. Nicole had admitted to smoking marijuana during her pregnancy and also to a history of methamphetamine use.

The social worker testified that after being placed with Michael, Sebastian "has made so many monumental milestones and has had such great success. Like I said, we successfully terminated Wrap. When he came into his brother's home he still had quite a number of issues related to managing his anger. . . . [¶] We have not seen any of that for months. . . . [¶] He's very, very bonded to [Michael]. He refers to his brother as his role model and his mentor and actually speaks very highly of his older brother and even talks about how much he misses him when he's off doing his own thing. [¶] This is probably one of the most warming, heartfelt, amazing cases I've had of a reunification of a child with another family member not the primary parents. And Sebastian, to me, needs to be with his brother."

Jorge testified that he was willing to submit to a drug test, but could not afford to do so and needed the bureau to pay for it. However, he also admitted that he had not even called a drug testing company to find out about testing. Jorge said that he attends AA/NA meetings "[t]wice, one time a week" but he could not provide sign-in sheets to demonstrate attendance because they "got lost just recently." When asked if he went to a parenting class, Jorge responded: "Ms. Wood gave me papers. I lost the papers, also."

After hearing evidence, the court commented that "father promises many things but delivers very few things. And that has been the history throughout the course of these proceedings. Since day one, quite frankly, father has stated he wishes to reunify but then he disappears for months on end. He has done virtually nothing to address the issues that brought this family before the court in the first place. [¶] And in reviewing the first

6

volume of this file, it's clear that Sebastian really suffered as a result of the issues that occurred in this family that brought this before the court. He has really come such a long way. And he's done all that without any participation, quite frankly, of father. And he's done that through the hard work of Sebastian, through the CASA's commitment, [the social worker's] commitment and now the brother's commitment. [¶] And I, quite frankly, think it would be detrimental to Sebastian to drag this out and see if dad is going to get on board. . . . If dad can't figure out how to get to those most important days in his child's life by now it's not going to happen. There's no evidence that it's going to happen. And it's tragic that dad can't put aside his own issues to be there for his son."

The court set July 10, 2014, for a section 366.26 hearing.

On March 19, 2014, Jorge timely filed a notice to file a writ petition. The writ petition was filed on April 18, 2014. On April 23, 2014, we issued an order to show cause and the bureau filed its opposition on May 7, 2014.

## DISCUSSION

Jorge contends that the juvenile court's decision not to grant him further reunification services, pursuant to section 366.3, subdivision (f), was not supported by substantial evidence and was an abuse of the court's discretion. We disagree.

We must first disabuse Jorge of a notion that informs the entirety of his petition. He asserts that "the record is clear that the [bureau] never provided [him] with any reunification services whatsoever" and that "[t]he evidentiary record is bereft of any indication that the father was offered or provided reunification services." To the contrary, the court ordered reunification services for him and the bureau stood ready to provide them should Jorge have come forward during the time when he was entitled to such services.

"[W]hile the dependency scheme generally requires that parents be offered reunification services, the Legislature has limited those services to 'a maximum time period not to exceed 12 months,' which under certain circumstances may be extended to 18 months. (§ 361.5, subd. (a).) . . . The reunification period is expressly *not* tolled by the parents' physical custody of the child, or by the parents' absence or incarceration.

7

(§ 361.5, subds. (a), (d) & (e)(1).)" (*In re Zacharia D.* (1993) 6 Cal.4th 435, 446, fn. omitted.) The reunification period is calculated from "the date the child entered foster care," which is deemed to be the earlier of the section 356 jurisdictional hearing or 60 days after the date on which the minor was initially removed from the parents' physical custody. He states: "The facts of the instant case indicate that the father has been visiting regularly with his son, Sebastian. The evidence indicated that the child, Sebastian, was 'elated' visiting with his father, and that his father was appropriate and nurturing throughout the visits. Additionally, the record reflects that the father was gainfully employed on a full-time basis, had safe and spacious housing for Sebastian to visit or to live at, and that the father spoke with Sebastian every other day on the telephone, and demonstrated a commitment to reunify with his son."

We disagree with Jorge's view of the evidence. Missing two of five scheduled Wrap meetings, including a party celebrating Sebastian's termination of Wrap services, does not constitute "regular" visitation. Jorge's residence cannot be considered safe for Sebastian while Jorge is unable to provide negative drug tests or document attendance at AA/NA meetings and while the bureau has well-founded concerns that Nicole, who lives with Jorge, may be using drugs. Sebastian may enjoy his supervised visits with Jorge, but that does not demonstrate that it is in Sebastian's best interest to reunify with Jorge. Jorge consistently states that he is committed to reunification, but, as the juvenile court observed, he has failed to demonstrate that commitment in actions.

Jorge cites *Cynthia D. v. Superior Court* (1993) 5 Cal.4th 242, 253 for the proposition that " '[w]here there is still reason to believe that a positive, nurturing parent-child relationship exists the *parens patriae* interest favors preservation rather than termination of parental bonds.' " He asserts: "In the instant case, the juvenile court's order is antithetical to this stated judicial goal, and fails to promote the best interests of the minor." We disagree. The question before the juvenile court was not whether Jorge's parental rights should be terminated, but whether he should be granted further reunification services. Even without reunification services, a bond between Sebastian and Jorge may yet be preserved. To determine that granting Jorge additional

reunification services is not in Sebastian's best interest is not tantamount to termination of Jorge's parental rights.

We find no abuse of discretion by the juvenile court and ample evidence that granting further reunification services to Jorge would not be in Sebastian's best interest.

## DISPOSITION

The March 12, 2014 order of the court, denying Jorge's motion for additional reunification services, is affirmed. This opinion is final forthwith. (Cal. Rules of Court, rules 8.452(i), 8.490(b)(2)(A).)

_____
Brick, J.*

We concur:

_____
Kline, P.J.

_____
Richman, J.

* Judge of the Alameda County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

9